IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DESMOND BRADLEY, individually and as father and next friend of C.B. and A.B., minors, *et al.*, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO. 2:23-cv-122-ECM |
| | ) | [WO] |
| BIG'S TRUCKING, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| CHARASMA MOSELEY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO. 2:23-cv-262-ECM |
| | ) | [WO] |
| BIG'S TRUCKING, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

Now pending before the Court are motions for summary judgment filed by Defendant Commercial Express, Inc. ("Commercial Express") on June 18, 2024 (doc. 105 in *Bradley v. Big's Trucking*, 2:23-cv-122-ECM ("*Bradley*")); Defendant AmerisourceBergen Drug Corporation ("ABDC") on May 29, 2024 (doc. 98 in *Bradley*); Commercial Express on June 18, 2024 (doc. 82 in *Moseley v. Big's Trucking*, 2:23-cv-262

("*Moseley*")); and ABDC on June 13, 2024 (doc. 77 in *Moseley*).[1]  The motions are fully briefed and ripe for review.  For the reasons that follow, ABDC and Commercial Express' motions for summary judgment (docs. 77, 82, 98, and 105) are due to be GRANTED.

## I.  JURISDICTION

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.  Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama.  *See* 28 U.S.C. § 1391.

## II.  LEGAL STANDARD

"Summary judgment is proper if the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting FED. R. CIV. P. 56(a)).  "[A] court generally must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016).  However, "conclusory allegations without specific supporting facts have no probative value." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018).  If the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party," then there is no genuine dispute as to any material fact. *Hornsby-Culpepper*, 906 F.3d at 1311 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

---

[1] Pursuant to its authority under Federal Rule of Civil Procedure 42(a)(3), the Court consolidates the two actions for the limited purpose of considering ABDC and Commercial Express' motions for summary judgment. *See* FED. R. CIV. P. 42(a)(3).

The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material fact, and the movant must identify the portions of the record which support this proposition. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant may carry this burden "by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Id.* The burden then shifts to the non-moving party to establish, by going beyond the pleadings, that a genuine issue of material fact exists. *Id.* at 1311–12.

The Court construes the facts in the light most favorable to the non-movant plaintiffs and draws all reasonable inferences in their favor. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000) ("In assessing whether there is any 'genuine issue' for trial, the court 'must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party' and 'resolve all reasonable doubts about the facts in favor of the non-movant.' Moreover, the court must avoid weighing conflicting evidence or making credibility determinations." (citations omitted)).

### III.  BACKGROUND

These matters arise from a series of vehicular accidents that occurred in Lowndes County, Alabama.  On March 13, 2022, a collision caused all northbound traffic to completely stop on Interstate 65 ("I-65") near mile marker 154.  Following this collision, at approximately 3:44 p.m., a tractor-trailer driven by Defendant Ricky Gray ("Gray") crashed into a line of stopped vehicles, which included Charasma Moseley's vehicle ("Moseley").  Moseley allegedly sustained physical injuries in the accident and her eleven-

year-old daughter, K. A. H. M., died.  The *Moseley* Plaintiffs[2] subsequently filed their lawsuit in the Circuit Court of Lowndes County, Alabama on March 24, 2023, (doc. 1-2 at 3 in *Moseley*), and ABDC removed the case to federal court on April 26, 2023 (doc. 1 in *Moseley*).[3]

The *Bradley* Plaintiffs,[4] also in the line of stopped vehicles, similarly allege that they sustained injuries as the result of Gray's conduct.  Accordingly, they filed their lawsuit in the Circuit Court of Lowndes County, Alabama on March 18, 2022, (doc. 1-2 at 3 in *Bradley*), and ABDC removed the case to federal court on March 2, 2023, following service of the third amended complaint (doc. 1 at 3, para. 9 in *Bradley*).[5]

According to Gray, he was working for Big's Trucking[6] and driving from Commercial Express' warehouse in Pensacola, Florida to ABDC's distribution center in

---

[2] The *Moseley* Plaintiffs are Charasma Moseley and Ronald Moseley, as administrator Ad Litem for the Estate of K. A. H. M., deceased. (*See generally* doc. 1-2 in *Moseley*).

[3] The *Moseley* Defendants are: ABDC, Commercial Express, Ricky Gray, Big's Trucking, Pamela Tarter, Jeffrey Tarter, Outlaw Express, LLC, and several fictitious defendants. (*See generally* doc. 1-2 in *Moseley*). State Farm Mutual Automobile Insurance Company ("State Farm") was a defendant, but upon motion of the *Moseley* Plaintiffs and State Farm, the Court dismissed State Farm from this case on September 18, 2023. (Doc. 40 in *Moseley*).  Only ABDC and Commercial Express filed motions for summary judgment.

[4] The *Bradley* Plaintiffs consist of Desmond Bradley and Andrea Thomas, individually and as parents and next friends of C.B. and A.B., minors; Paul C. Harris; Brian Buerkle; and Tracy Powell. (*See generally* doc. 42 in *Bradley*).

[5] The *Bradley* Defendants are: ABDC, Commercial Express, Ricky Gray, Big's Trucking, Pamela Tarter, Jeffrey Tarter, Outlaw Express, LLC, and several fictitious defendants. (*See generally* doc. 42 in *Bradley*). Geico Casualty Insurance Company ("Geico") was initially a defendant, but on April 26, 2022, the Circuit Court of Lowndes County dismissed Geico upon a joint stipulation of dismissal by the parties. (Doc. 1-3 at 34 in *Bradley*).  Only ABDC and Commercial Express filed motions for summary judgment.

[6] In his deposition, Gray stated that Outlaw Express, LLC rebranded as Big's Trucking. (Doc. 98-2 at 10, 29:7–21 in *Bradley*).  This rebranding occurred between 2018 and 2019. (Doc. 107 at 5 in *Bradley*).  Brian Lipford was the manager and registered agent of Outlaw Express, LLC prior to its dissolution. (Doc. 5-1 at 2 in *Bradley*; doc. 1-3 at 2 in *Moseley*).

Buford, Georgia. (Doc. 98-2 at 10, 29:7–9; *id.* at 49:16–51:12).  ABDC contracted with Commercial Express to transport its products.  Because Commercial Express has no transport trucks of its own, it contracts with hundreds of vendors across the country to transport goods for a variety of customers.  In 2009, Kenneth Branch on Branch LLC's behalf, entered into a contractual agreement with Commercial Express.  Branch LLC then coordinated with Pamela Tarter and Jeffrey Tarter d/b/a Big's Trucking for Gray to drive the tractor-trailer involved in the March 13, 2022 crash.  The Tarters, Brian Lipford, and Kenneth Branch are all family members.

The *Moseley* Plaintiffs assert claims of negligence and wantonness under Alabama state law as to ABDC and Commercial Express for the selection and supervision of Gray, along with their alleged failure to comply with Federal Motor Carrier Safety regulations. (Doc. 1-2 at 14–16, paras. 52–58 in *Moseley*).  And the *Bradley* Plaintiffs assert a litany of claims against ABDC and Commercial Express for negligent/wanton selection, failure to provide/verify insurance, and loss of consortium due to negligence—all of which sound in Alabama state law. (Doc. 42 at 9–15, paras. 30–45 in *Bradley*).

## IV.  DISCUSSION

ABDC and Commercial Express[7] move for summary judgement in both *Moseley* and *Bradley*, in part, on the basis that the claims asserted by the Plaintiffs[8] against them are preempted by federal law. (Doc. 82-1 at 7 in *Moseley*) (Commercial Express' brief in support of motion for summary judgment in *Moseley*); (doc. 78 at 1 in *Moseley*) (ABDC's brief in support of motion for summary judgment in *Moseley*); (doc. 99 at 1 in *Bradley*) (ABDC's brief in support of motion for summary judgment in *Bradley*); (doc. 105-1 at 8–9 in *Bradley*) (Commercial Express' brief in support of motion for summary judgment in *Bradley*).  Specifically, ABDC and Commercial Express contend that the Federal Aviation Administration Authorization Act of 1994's ("FAAAA") preemption provision, codified at 49 U.S.C. § 14501(c)(1), applies and that its subsequent savings clause, codified at 49 U.S.C. § 14501(c)(2)(A), does *not* apply. (Doc. 82-1 at 7 in *Moseley*); (doc. 78 at 1 in *Moseley*); (doc. 99 at 1 in *Bradley*); (doc. 105-1 at 8–9 in *Bradley*).  Because this issue is

---

[7] Though not addressed by the parties, Commercial Express never filed an answer in either case.  Failure to file an answer by a defendant moving for summary judgment does not preclude a court from entertaining such a motion. *See Marquez v. Cable One, Inc.*, 463 F.3d 1118, 1120 (10th Cir. 2006); *HS Resources, Inc. v. Wingate*, 327 F.3d 432, 440 (5th Cir. 2003); *INVST Fin. Grp., Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 404 (6th Cir. 1987) ("Courts and commentators have acknowledged that no answer need be filed before a defendant's motion for summary judgment may be entertained."); *Jones v. U.S. Dep't of Just.*, 601 F. Supp. 2d 297, 302 (D.D.C. 2009) ("A defendant, however, is not required to respond in the form of an answer before making a motion for summary judgment, which may be made by a defending party 'at any time.'"); *see also* FED. R. CIV. P. 56(b) (authorizing a party to move for summary judgment "at any time" until 30 days after the close of discovery, unless otherwise specified by the court or local rule); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290, 299 (1968) (affirming summary judgment for a defendant despite said defendant's failure to file an answer).

The Court here, and elsewhere in the Opinion, cites to non-binding authority.  While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

[8] The Court collectively refers to the *Moseley* Plaintiffs and the *Bradley* Plaintiffs as "the Plaintiffs."

dispositive, the Court's analysis of the motions for summary judgment begins—and ends—with preemption.

Under the Supremacy Clause, the United States Constitution and federal law "made in Pursuance thereof" are the "supreme law of the Land." U.S. Const. art. VI, cl. 2.  Thus, the Supremacy Clause invalidates any "state laws that 'interfere with, or are contrary to' federal law." *Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261, 1266 (11th Cir. 2023) (quoting *Gibbons v. Ogden*, 22 U.S. 1, 211 (1824)).  "Put simply, federal law preempts contrary state law." *Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150, 162 (2016).  This Court may consider preemption when evaluating a motion for summary judgment. *See Bartholomew v. AGL Res., Inc.*, 361 F.3d 1333, 1337 (11th Cir. 2004).  The Eleventh Circuit recognizes three types of preemption in which state law must yield to federal law: express preemption, field preemption, and conflict preemption. *Aspen*, 65 F.4th at 1266 (citing *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1094 (11th Cir. 2021)).  Here, the Court only considers express preemption, which "occurs when Congress displaces state law 'by so stating in express terms.'" *Id.*  (quoting *Taylor v. Polhill*, 964 F.3d 975, 981 (11th Cir. 2020)).

The FAAAA expressly preempts contrary state law and bars states from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or *service* of any motor carrier . . . , broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c)(1) (emphasis added).  After concluding that state governance of intrastate transportation of property burdened interstate commerce and American consumers, Congress enacted the FAAAA's preemption

provision to limit states' reach into the trucking industry. *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 256 (2013) (citing *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 440 (2002)).  In *Dan's City Used Cars, Inc.*, the Supreme Court held that § 14501(c)'s phrase "related to a price, route, or service of any motor carrier" embraces state laws that have "a connection with or reference to carrier rates, routes, or *services*, whether directly or indirectly." *Id*. at 260 (quotations omitted) (emphasis added). Put differently, the breadth of the preemption provision is expansive. *See Aspen*, 65 F.4th at 1266–67.

Although the FAAAA's preemption provision is expansive, it is not without limit. For example, though "a connection with or reference to carrier rates, routes, or services" may be direct or indirect, it does not preempt state laws that do so "in only a 'tenuous, remote, or peripheral . . . manner.'" *Dan's City Used Cars, Inc.*, 569 U.S. at 261 (quoting *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 371 (2008)).  In addition, the FAAAA's preemption provision "shall not restrict the safety regulatory authority of a State with respect to motor vehicles . . . or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization." 49 U.S.C. § 14501(c)(2)(A).  This savings clause's first component stating that the preemption provision "shall not restrict the safety regulatory authority of a State with respect to motor vehicles" is known as the FAAAA's "safety exception."  *Aspen*, 65 F.4th at 1268.  And for the safety exception to apply to negligence claims, (1) the negligence standard must constitute an exercise of the state's "safety

regulatory authority," and (2) that authority must have been exercised "with respect to motor vehicles." *Id.* at 1264.

In enacting the FAAAA's express preemption provision, Congress borrowed language from the Airline Deregulation Act of 1978 ("ADA"), which sought to deregulate the domestic airline industry years earlier. *Dan's City Used Cars, Inc.*, 569 U.S. at 255. Because the sole difference between the ADA and FAAAA preemption provisions is the FAAAA's inclusion of the phrase "with respect to the transportation of property," the Eleventh Circuit looks to ADA preemption case law to interpret the FAAAA preemption provision at issue here. *Aspen*, 65 F.4th at 1266 n.2.

The FAAAA's preemption provision expressly references industry participants, including motor carriers, brokers, and freight forwarders.  For those unfamiliar with the trucking industry, a "shipper" is the "'person who . . . owns the goods being transported'— like a manufacturer, retailer, or distributor," *id.* at 1264 (quoting 49 U.S.C. § 13102(13)); a "broker" is "one who 'sells, offers for sale, negotiates for, or holds itself out . . . as selling, providing, or arranging for, transportation by motor carrier for compensation,'" *id.* at 1267 (quoting 49 U.S.C. § 13102(2)); a "motor carrier" is "a person providing motor vehicle transportation for compensation," 49 U.S.C. § 13102(14); and a "freight forwarder" is "a person holding itself out to the general public . . . to provide transportation of property for compensation," who typically "assembles and consolidates . . . shipments," and "assumes responsibility for the transportation from the place of receipt to the place of destination[,] and [] uses for any part of the transportation a carrier . . ." *id.* at § 13102(8).  The FAAAA further defines "transportation" to include "services related to" "the movement of . . .

property," "including arranging for, receipt, delivery, elevation, transfer in transit, . . . and interchange of . . . property." *Aspen*, 65 F.4th at 1267 (citing 49 U.S.C. § 13102(23)).

With this background in mind, the Court proceeds to whether the FAAAA preempts the Plaintiffs' claims against ABDC and Commercial Express.  To do so, the Court considers whether the Plaintiffs' claims fall within the scope of the FAAAA preemption clause and whether those same claims fall outside the scope of the FAAAA's safety exception.  Importantly, this means that the Court must assess the type of claims asserted by the Plaintiffs, rather than the precise factual scenario surrounding the claims. *See Gauthier v. Hard to Stop LLC*, 2024 WL 3338944, at *2 (11th Cir. July 9, 2024) ("Our holding in *Aspen* that a challenge to a broker's front-end selection of a motor carrier is preempted in no way turned on the back-end injury suffered as a result of the allegedly negligent selection.").  As such, though the motions at issue are for summary judgment, the Court references the Plaintiffs' operative complaints to elucidate the types of claims which the Plaintiffs assert against ABDC and Commercial Express, and not to determine factual issues.  At the same time, the Court keeps in mind that "[a] plaintiff may not amend [their] complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).

## A.    Preemption as to Claims Against ABDC

In their operative complaint, the *Bradley* Plaintiffs describe ABDC as being a "broker and/or shipper" liable for their injuries because ABDC "negligently/wantonly breached their duty of care by hiring and/or contracting with [Pamela Tarter, Jeffrey Tarter, Big's Trucking, and/or Outlaw Express, LLC] to transport said load when [D]efendants

[Pamela Tarter, Jeffrey Tarter, Big's Trucking, and/or Outlaw Express, LLC] had a demonstrated disregard for safety." (Doc. 42 at 6, paras. 22–23 in *Bradley*). Similarly, in their complaint, the *Moseley* Plaintiffs describe ABDC as "the broker and/or shipper for the load being transported . . . at the time of the crash," (doc. 1-2 at 5, para. 8 in *Moseley*), who breached its "duty of care by hiring and/or contracting with Defendants Big's Trucking, Outlaw Express[, LLC], Pamela Tarter, Jeffrey Tarter, and/or Fictitious Defendants . . . to transport a load of cargo from Buford, Georgia when Defendants Big's Trucking, Outlaw Express[, LLC], Pamela Tarter, Jeffrey Tarter, and/or Fictitious Defendants had a demonstrated disregard for safety and compliance with [Federal Motor Carrier Safety Act]." (*Id.* at 9, para. 27 in *Moseley*).

The FAAAA preempts state law claims regarding negligent hiring of a motor carrier in a personal injury case. In a 2023 case about cargo theft, the Eleventh Circuit examined the FAAAA's preemption provision and held that a state law negligent hiring claim is connected to broker services regarding the transportation of property, and such a claim is thus preempted by the FAAAA. *Aspen*, 65 F.4th at 1264, 1272. The FAAAA's preemption provision expressly applies when a claim relates to the "*service* of any motor carrier . . . , broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c)(1) (emphasis added). In *Aspen*, the selection of a motor carrier to transport shipments, "is precisely the brokerage service that" a negligent hiring claim against a broker challenges: the broker's "allegedly inadequate selection of a motor carrier to transport . . . shipment[s]." *See id.* at 1267. Indeed, an allegation of negligence "against a transportation broker for its selection of a motor carrier to transport property in interstate

11

commerce" relates to a broker's "core transportation-related services." *Id.* at 1268. Accordingly, *Aspen* held that a plaintiff's state law negligent hiring claim against a broker is preempted by § 14501(c)(1) of the FAAAA. *Id.* at 1268, 1272.  Similarly, the Plaintiffs' state law negligent hiring claims against ABDC are preempted.

The Court next considers whether the FAAAA's safety exception applies to the Plaintiffs' claims against ABDC.  The FAAAA's preemption provision "shall not restrict the safety regulatory authority of a State *with respect to motor vehicles*." 49 U.S.C. § 14501(c)(2)(A) (emphasis added).   Although the FAAAA's preemption provision is limited by the safety exception, that limit does not apply here because claims regarding negligent hiring are not "with respect to motor vehicles." *Aspen*, 65 F.4th at 1272.  Here, the gravamen of the Plaintiffs' claims in their complaints against ABDC are its selection of a motor carrier while it was acting as a "broker and/or shipper."  The preemption clause of § 14501(c)(1) is designed to capture this exact scenario because, like *Aspen*, the claims stem from an entity's "core transportation-related services," and do not directly relate to a motor vehicle, even if ABDC acted solely as a shipper.[9] *See id.* at 1268, 1272; *Creagan v. Wal-Mart Transp., LLC*, 354 F. Supp. 3d 808, 813 n.6 (N.D. Ohio 2018) ("Although Wal-Mart is a shipper rather than a broker, the negligent hiring claim against Wal-Mart stems entirely from Kirsch's broker services [of hiring the motor carrier]. Because the claim

---

[9] Contentions regarding the alleged failure to verify adequate insurance coverage are included within the same claim(s) as the alleged negligent/wanton hiring because conduct regarding the verification of insurance coverage would be encapsulated by the "services" of such actors. *See Enbridge Energy, LP v. Imperial Freight Inc.*, 2019 WL 1858881, at *2 (S.D. Tex. Apr. 25, 2019) (citing *Huntington Operating Corp. v. Sybonney Exp., Inc.*, 2010 WL 1930087, at *3 (S.D. Tex. May 11, 2010)).

against Wal-Mart indirectly attempts to regulate broker services, it must be preempted as well."); *Rowe*, 552 U.S. at 372 (holding that a Maine regulation on shippers would ultimately result in carriers altering their services, thus the claims at issue were preempted by the FAAAA).

The *Bradley* and *Moseley* Plaintiffs argue that *Aspen* is only applicable to claims involving cargo theft and not claims that involve tort claims for personal injury. (Doc. 107 at 11 in *Bradley*)[10]. Subsequent to the Plaintiffs making these arguments, a panel of the Eleventh Circuit found such arguments to be unavailing in *Gauthier*. 2024 WL 3338944, at *2. Specifically, the *Gauthier* panel wrote:

> [The *Gauthier* plaintiff] also contends that cases arising from traffic accidents (like this one) should be treated differently than cases arising from property loss (like *Aspen*). But the nature of the injury is not what matters for purposes of the [FAAAA's] preemption provision. Any claim that a broker negligently selected a driver to haul a load of property clearly falls within Section 14501(c)(1) because, as just noted, that claim seeks to regulate the broker's "performance of [its] core transportation-related services." [*Aspen*, 65 F.4th at 1268.] And such claims do not arise from an exercise of "the safety regulatory authority of a State with respect to motor vehicles," 49 U.S.C. § 14501(c)(2)(A), which requires that the relevant state law "have a direct relationship to motor vehicles," *Aspen*, 65 F.4th at 1271. We made that clear in *Aspen* by holding that negligent-selection-of-broker claims necessarily lack a direct relationship because "the services [a broker] provides have no direct connection to motor vehicles." *Id.* at 1272 (quoting *Miller*[*v. C.H. Robinson Worldwide, Inc.*], 976 F.3d [1016,] 1031 [(9th Cir. 2020)] (Fernandez, J., concurring in part and dissenting in part)). Our holding in *Aspen* that a challenge to a broker's front-end selection of a motor carrier is preempted in

---

[10] The *Bradley* and *Moseley* Plaintiffs filed a joint response to ABDC's motions to dismiss, which is document 107 in *Bradley* and document 84 in *Moseley*. Thus, the responses filed in each case are identical and the Court will refer solely to the document in *Bradley* for consistency.

no way turned on the back-end injury suffered as a result of the allegedly negligent selection.

*Id.*  Particularly persuasive to this Court is that *Gauthier* directly addresses allegations which mirror the Plaintiffs' allegations against ABDC. *Compare id.* at *1 (stating that the *Gauthier* plaintiff alleged that the broker at issue failed to "ensure that the motor carriers with whom it arranged transportation of goods were reasonably safe"), *with* (doc. 42 at 6, paras. 22–23 in *Bradley*; doc. 1-2 at 9, para. 27 in *Moseley*).

In supplementary briefing, the Plaintiffs argue that the *Gauthier* panel "made the wrong decision on FAAAA preemption as it relates to common law negligence claims because the *Aspen* panel got its decision wrong." (Doc. 116 at 2 in *Bradley*).[11]  In so doing, the Plaintiffs stack a series of arguments about the interplay between the phrases "with respect to" and "related to" to conclude that *Aspen* does not control here because it ignores Supreme Court precedent. (*Id.* at 2–7).  The Court disagrees and finds these arguments unconvincing.  Putting aside that the Court finds both *Aspen* and *Gauthier* to be persuasive, the fact remains that *Aspen* is binding precedent and *Gauthier*—though unpublished and not binding—further clarified what *Aspen* already held.

With that said, the evidentiary record and the parties' filings offer a different account of ABDC's role than the version described in the Plaintiffs' complaints.  Instead of demonstrating that ABDC directly selected Big's Trucking, Outlaw Express, LLC, Pamela Tarter, and Jeffrey Tarter to transport ABDC's products, the record indicates that ABDC

---

[11] The same document is filed as document 94 in *Moseley*.

(acting as a shipper) selected Commercial Express (acting as a motor carrier/freight forwarder),[12] who in turn selected Branch LLC, and so forth until the hiring of Big's Trucking or Outlaw Express, LLC as the ultimate motor carrier which, as alleged by the Plaintiffs, was the problematic choice in the chain. (Doc. 107 at 4–6 in *Bradley* (Plaintiffs' joint response describing the relationships amongst the various parties); doc. 98-7 in *Bradley* (carrier services agreement between ABDC and Commercial Express);[13] doc. 98-5 at 6, 14:6–15:5 in *Bradley*; doc. 42 at 7, para. 23 in *Bradley*; doc. 1-2 at 9, para. 27 in *Moseley*).  As such, the Plaintiffs are attempting to hold ABDC (the shipper) liable for the selection of a motor carrier by an entity at some point in the chain between ABDC and Gray—a claim which is preempted regardless of which entity in the chain made the problematic selection. *See Creagan*, 354 F. Supp. 3d at 813 n.6 ("Although Wal-Mart is a shipper rather than a broker, the negligent hiring claim against Wal-Mart stems entirely from Kirsch's broker services [of hiring the motor carrier]. Because the claim against Wal-Mart indirectly attempts to regulate broker services, it must be preempted as well.").

Again, even if the Court took the Plaintiffs' complaints at face value while ignoring their later representations and the evidentiary record,[14] the Court would reach the same conclusion because the Plaintiffs' claims in their complaints stem from ABDC's alleged

---

[12] As later discussed in the Opinion, Commercial Express, at times, blurred the line between motor carrier and freight forwarder.

[13] This is document 77-7 in *Moseley*.

[14] This standard is more akin to the standard for a motion to dismiss rather than summary judgment. However, the Court uses this hypothetical to underscore that the Plaintiffs' claims would be preempted regardless of the evidentiary standard utilized by the Court.

negligent selection of a motor carrier to transport property in interstate commerce.  In other words, ABDC essentially acted as a broker by selecting a carrier, as acknowledged by the Plaintiffs' complaints referring to ABDC as a "broker and/or shipper." (*See* doc. 1-5 at 9, para. 21 in *Bradley*; doc. 1-2 at 5, para. 8 in *Moseley*).  Accordingly, while officially a shipper, holding ABDC liable for its alleged selection of a motor carrier would allow states to indirectly intervene into the services market of the trucking industry in a manner which the FAAAA sought to prevent. *See Creagan*, 354 F. Supp. 3d at 813 n.6; *Rowe*, 552 U.S. at 372 (holding that a Maine regulation on shippers would ultimately result in carriers altering their services, thus the claims at issue were preempted by the FAAAA); *see also Aspen*, 65 F.4th at 1267 (citing *Rowe*, 552 U.S. at 370).

At bottom, the claims against ABDC by the Plaintiffs stem from the actions of entities acting as motor carriers or freight forwarders, entrusted with arranging and transporting ABDC's products and selecting other motor carriers.  The claims against ABDC by the Plaintiffs are expressly preempted by the FAAAA, as codified at § 14501(c)(1), and the safety exception in § 14501(c)(2)(A) does not apply here because the Plaintiffs' negligent hiring claims are not "with respect to motor vehicles." *See Aspen*, 65 F.4th at 1272.  Therefore, ABDC's motions for summary judgment (doc. 98 in *Bradley* and doc. 77 in *Moseley*) are due to be granted.

**B.    Preemption as to Claims Against Commercial Express**

The Court now turns to the Plaintiffs' claims against Commercial Express.  In their operative complaint, the *Bradley* Plaintiffs describe Commercial Express as the "broker and/or shipper" liable for their injuries because Commercial Express

"negligently/wantonly breached their duty of care by hiring and/or contracting with [Pamela Tarter, Jeffrey Tarter, Big's Trucking, and/or Outlaw Express, LLC] to transport said load when [D]efendants [Pamela Tarter, Jeffrey Tarter, Big's Trucking, and/or Outlaw Express, LLC] had a demonstrated disregard for safety." (Doc. 42 at 6, paras. 22–23 in *Bradley*).  And in their respective complaint, the *Moseley* Plaintiffs describe Commercial Express as "the broker and/or shipper for the load being transported . . . at the time of the crash," (doc. 1-2 at 6, para. 9 in *Moseley*), who breached its "duty of care by hiring and/or contracting with Defendants Big's Trucking, Outlaw Express[, LLC], Pamela Tarter, Jeffrey Tarter, and/or Fictitious Defendants . . . to transport a load of cargo from Buford, Georgia when Defendants Big's Trucking, Outlaw Express[, LLC], Pamela Tarter, Jeffrey Tarter, and/or Fictitious Defendants had a demonstrated disregard for safety and compliance with [Federal Motor Carrier Safety Act]." (*Id.* at 9, para. 27 in *Moseley*).

Plaintiffs' claims against Commercial Express—like their claims against ABDC— are preempted because the FAAAA preempts state law claims regarding negligent hiring of a motor carrier.  Taking the operative complaints at face value, the claims lodged against Commercial Express by the Plaintiffs are preempted by the FAAAA because Commercial Express would be a broker[15] defending against claims which stem from the alleged negligent hiring of a motor carrier.  As previously discussed, the Eleventh Circuit held that

---

[15] Though the complaints describe Commercial Express as a possible shipper, elsewhere in the complaints, the Plaintiffs state that the trailer (*i.e.*, the goods) was owned by ABDC, (doc. 1-2 at 8, para. 24 in *Moseley*; doc. 42 at 3, para. 10 in *Bradley*), which would make ABDC the shipper in said scenario. *See* 49 U.S.C. § 13102(13) (defining "individual shipper").  And, of course, both parties now acknowledge that ABDC owned the goods and was the shipper. (Doc. 107 at 4) (stating that Gray was delivering drugs on behalf of ABDC); (doc. 105-1 at 4, para. 13 in *Bradley*; doc. 82-1 at 4, para. 14 in *Moseley*).

a state law negligent hiring claim is connected to a broker's services regarding the transportation of property, thus, such a claim is preempted by the FAAAA. *Aspen*, 65 F.4th at 1272.  Indeed, such claims relate to a broker's "core transportation-related services," rather than in its capacity as a general member of the public. *Id.* at 1268.

Much like the Plaintiffs' varied descriptions of ABDC's role, the complaints' characterizations of Commercial Express' role differ slightly from what the record evidence shows and what the parties now represent.  In its motion for summary judgment briefing, Commercial Express characterized itself as blurred between a motor carrier and a freight forwarder.  (Doc. 82-1 at 8 in *Moseley* and doc. 105-1 at 8 in *Bradley*) (both citing 49 U.S.C. § 13102(8)); (doc. 88 at 7 n.2 in *Moseley* and doc. 111 at 7 n.2 in *Bradley*) ("The possession of the product in which they are distributing blurs Commercial Express[]' role between that of a motor carrier and freight forwarder.").  And, for their part, the Plaintiffs characterize Commercial Express as a freight forwarder. (Doc. 107 at 22).  Moreover, the agreement between ABDC and Commercial Express indicates that Commercial Express blurred the line between motor carrier and freight forwarder by taking possession of ABDC's products. (*See generally* doc. 98-7 in *Bradley*) (carrier services agreement between ABDC and Commercial Express).[16]  Indeed, additional record evidence demonstrates that the arrangement required Commercial Express to coordinate shipment of ABDC's product, hold the product in Commercial Express' warehouse, and complete

---

[16] This is document 77-7 in *Moseley*.

final mile deliveries[17] by other motor carriers. (*See, e.g.*, doc. 105-4 at 21, 75:7–11 in *Bradley*).[18]  Under this arrangement, Commercial Express' role closely resembles that of a freight forwarder. *See* 49 U.S.C. § 13102(8) (defining freight forwarder).

Despite the parties' characterization of Commercial Express' role, the relevant interpretive question is whether Plaintiffs' negligent hiring claims relate to a "service of any motor carrier . . . , broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c)(1) (emphasis added).  Here, Commercial Express' alleged actions that form the basis of the Plaintiffs' claims against it stem from its "core transportation-related services," rather than in its capacity as a general member of the public. *See Aspen*, 65 F.4th at 1268.  If Commercial Express was a freight forwarder, then it "assum[ed] responsibility for the transportation from the place of receipt to the place of destination[,] and [] use[d] for any part of the transportation a carrier," by hiring or contracting with Pamela Tarter, Jeffrey Tarter, Big's Trucking, and/or Outlaw Express, LLC. *See* 49 U.S.C. § 13102(8).  And if Commercial Express was a motor carrier, then it contracted with another motor carrier to further transport the shipment it was legally bound to transport, which is permissible under certain conditions. *See Morales v. OK Trans, Inc.*, 2023 WL 2495065, at *2 (S.D. Tex. Jan. 3, 2023); 49 C.F.R. § 371.2(a).  Therefore, it is unnecessary to determine whether Commercial Express was a freight forwarder or motor carrier because the Plaintiffs' claims are preempted under either scenario as falling

---

[17] "Final mile deliveries" refers to the final phase of transportation to a shipment's ultimate destination. *See Hamrick v. Partsfleet, LLC*, 1 F.4th 1337, 1340 (11th Cir. 2021).

[18] This is document 82-4 in *Moseley*.

squarely within the FAAAA's preemption provision regarding the respective core transportation-related services of a freight forwarder or motor carrier. *See Aspen*, 65 F.4th 1268.

Finally, Plaintiffs' claims find no refuge in the FAAAA's safety exception. Plaintiffs' claims against Commercial Express fall outside the FAAAA's safety exception because claims regarding negligent hiring are not "with respect to motor vehicles." *Aspen*, 65 F.4th at 1272. Like Plaintiffs' claims against ABDC, their negligent hiring claims against Commercial Express do not directly relate to a motor vehicle and thus remain preempted by the FAAAA.

For the foregoing reasons, the Plaintiffs' claims against ABDC and Commercial Express are expressly preempted by the FAAAA's preemption provision found at § 14501(c)(1) and are not captured by the subsequent savings clause at § 14501(c)(2)(A). Therefore, ABDC and Commercial Express' motions for summary judgment (docs. 77, 82, 98, and 105) are due to be granted.

## V. CONCLUSION

For the reasons discussed above, it is hereby ORDERED as follows:

1.    ABDC's motion for summary judgment in *Bradley* (doc. 98 in *Bradley*) is GRANTED, and all claims against ABDC are DISMISSED;

2.    Commercial Express' motion for summary judgment in *Bradley* (doc. 105 in *Bradley*) is GRANTED, and all claims against Commercial Express are DISMISSED;

3.    ABDC's motion for summary judgment in *Moseley* (doc. 77 in *Moseley*) is GRANTED, and all claims against ABDC are DISMISSED;

4.      Commercial Express' motion for summary judgment in *Moseley* (doc. 82 in

*Moseley*) is GRANTED, and all claims against Commercial Express are DISMISSED.

Done this 4th day of September, 2024.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE